FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 27 2019

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| DISH NETWORK L.L.C. and NAGRASTAR LLC, | ) ) ) ) Case No. 4:19-cv-149-BSM |
| Plaintiffs, | ) ) |
| v. | ) ) |
| SANTWUAN HICKS and TAMARA HICKS, | ) ) ) ) This case assigned to District Judge Miller |
| Defendant. | ) and to Magistrate Judge Deere ) ) |

## PLAINTIFFS' COMPLAINT

Plaintiffs DISH Network L.L.C. ("DISH") and NagraStar LLC ("NagraStar") file this complaint against the above-named Defendants and state as follows:

### PARTIES

1.  Plaintiff DISH is a Colorado limited liability company with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

2.  Plaintiff NagraStar is a Colorado limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112.

3.  Defendants Santwuan Hicks and Tamara Hicks (collectively, "Defendants") are individuals believed to be residing at 1112 Bittercress Dr., North Little Rock, Arkansas 72117.

### JURISDICTION AND VENUE

4.  This action alleges violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*, the Federal Communications Act, 47 U.S.C. § 605 *et seq.*, and the Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq.* Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1338.

1

5. Defendants reside in and regularly conduct business in the State of Arkansas, and therefore are subject to this Court's personal jurisdiction.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendants reside in this judicial district, § 1391(b)(2) because a substantial part of the events giving rise to DISH and NagraStar's claims occurred in this district, and § 1391(b)(3) because Defendants are subject to personal jurisdiction in this district. Venue is also proper in this Court under 28 U.S.C. § 1400(a) because this case asserts claims relating to the protection of copyrighted works.

## NATURE OF THE ACTION[1]

7. On information and belief, Defendants have been trafficking in server passcodes that are designed and used solely for purposes of circumventing DISH and NagraStar's security system and receiving DISH's satellite broadcasts of copyrighted television programming without payment of the required subscription fee. Defendants are also believed to have personally used these server passcodes to decrypt DISH and NagraStar's satellite signal and view DISH programming without authorization. Defendants' actions violate the Digital Millennium Copyright Act, Federal Communications Act, and Electronic Communications Privacy Act, as set forth below.

## DISH NETWORK SATELLITE TELEVISION PROGRAMMING

8. DISH is a multi-channel video provider that delivers video, audio, and data services to approximately 14 million customers throughout the United States, Puerto Rico, and the U.S. Virgin Islands via a direct broadcast satellite system.

---

[1] The allegations made by DISH and NagraStar concerning the whereabouts and wrongful conduct of Defendant are based on the investigation completed to date, and with the reasonable belief that further investigation and discovery in this action will lead to additional factual support. DISH and NagraStar reserve the right to supplement or amend its claims and the basis for those claims, with leave of court if necessary, as additional investigation and discovery is conducted.

9. DISH uses high-powered satellites to broadcast, among other things, movies, sports, and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee, or in the case of a pay-per-view movie or event, the purchase price.

10. DISH contracts for and purchases the distribution rights for most of the programming broadcast on the DISH platform from providers such as network affiliates, motion picture distributors, pay and specialty broadcasters, cable networks, sports leagues, and other holders of programming rights.

11. The works broadcast by DISH are copyrighted. DISH and NagraStar have the authority of the copyright holders to protect the works from unauthorized reception and viewing.

12. DISH programming is digitized, compressed, and scrambled prior to being transmitted to multiple satellites located in geo-synchronous orbit above Earth. The satellites, which have relatively fixed footprints covering the United States and parts of Canada, Mexico, and the Caribbean, relay the encrypted signal back to Earth where it can be received by DISH subscribers that have the necessary equipment.

13. A DISH satellite television system consists of a compatible dish antenna, receiver, smart card which in some instances is internalized in the receiver, television, and cabling to connect the components. DISH provides receivers, dish antenna, and other digital equipment for the DISH system. Smart cards and other proprietary security technologies that form a conditional access system are supplied by NagraStar.

14. Each DISH receiver and NagraStar smart card is assigned a unique serial number that is used by DISH when activating the equipment and to ensure the equipment only decrypts

programming the customer is authorized to receive as part of his subscription package and pay-per-view purchases.

15. The NagraStar conditional access system performs two interrelated functions in the ordinary course of its operation: first, subscriber rights management, which allows DISH to "turn on" and "turn off" programming a customer has ordered, cancelled, or changed; and second, protection of the NagraStar control words that descramble DISH's satellite signal, which in turn prevents unauthorized decryption of DISH programming.

16. An integral part of NagraStar's conditional access system is a smart card having a secure embedded microprocessor. The DISH receiver processes an incoming DISH satellite signal by locating an encrypted part of the transmission known as the NagraStar entitlement control message and forwards it to the smart card. Provided the subscriber is tuned to a channel he is authorized to watch, the smart card uses its decryption keys to unlock the message, uncovering a NagraStar control word. The control word is then transmitted back to the receiver to decrypt the DISH satellite signal.

17. Together, the DISH receiver and NagraStar smart card convert DISH's encrypted satellite signal into viewable programming that can be displayed on the attached television of an authorized DISH subscriber.

## PIRACY OF DISH NETWORK PROGRAMMING

18. The term "piracy" (or signal theft) is used throughout the pay-tv industry to refer to the circumvention of security technology protecting a pay-tv signal and/or the unauthorized reception, decryption, or viewing of a pay-tv signal. A form of satellite piracy exists that goes by several names including "control word sharing," "Internet key sharing," or more simply "IKS."

19. With IKS, once piracy software is loaded onto an unauthorized receiver, the end user connects the receiver to the Internet via a built-in Ethernet port or an add-on dongle. The Internet connection automatically updates piracy software on the receiver and contacts a computer server that provides the necessary NagraStar control words.

20. The computer server, called an "IKS server," has multiple, subscribed NagraStar smart cards connected to it, and thus the ability to provide the control words. Access to an IKS server typically requires a valid passcode. Once access has been obtained, control words are sent from the IKS server over the Internet to an unauthorized receiver, where they are used to decrypt DISH's signal and view programming without paying a subscription fee.

## DEFENDANT'S WRONGFUL CONDUCT

21. DSSLegends sold subscription-based IKS services, including NFPS, (the "IKS Services") whereby members purchase a subscription to the IKS Services to obtain the control words that are used to circumvent the DISH and NagraStar security system and receive DISH's satellite broadcasts of television programming without authorization.

22. IKS Subscriptions consist of passcodes to access each of the IKS Services, ("IKS Server Passcodes"). DISH and NagraStar obtained copies of DSSLegends' business records pertaining to Defendants. DSSLegends' records show that Defendants purchased numerous subscriptions to the IKS Services within the statute of limitations for each claim that DISH and Nagra are bringing against Defendants.

23. On information and belief, Defendants re-sold certain IKS Server Passcodes that they purchased from DSSLegends. These IKS Server Passcodes enabled Defendants' customers to access the IKS Services using an unauthorized receiver loaded with piracy software. Each time that the customer tuned their unauthorized receiver to an encrypted DISH channel, the

receiver requested the control word for that particular channel from the IKS servers. The IKS servers then returned the NagraStar control word, which the customer used to decrypt DISH's satellite signal and view DISH programming without purchasing a subscription from DISH.

24. On information and belief, Defendants also used certain IKS Server Passcodes that they purchased for their own personal benefit. Defendants are believed to have used an IKS Server Passcode in connection with an unauthorized received loaded with piracy software to access the IKS Services. Each time Defendants tuned the unauthorized receiver to an encrypted DISH channel, the receiver requested the control word for that particular channel from the IKS server. The IKS server then returned the control word to Defendants, which they used to decrypt DISH's satellite signal and view DISH programming without purchasing a subscription from DISH.

25. Defendants' actions cause actual and imminent irreparable harm for which there is no adequate remedy at law. Through IKS piracy, Defendants enjoy unlimited access to DISH programming, including premium and pay-per-view channels, causing lost revenues that cannot be fully calculated. In addition, Defendants' actions damage the business reputations and goodwill of DISH and NagraStar, and result in the need for costly and continuous security updates, investigations, and legal actions aimed at stopping satellite piracy.

## CLAIMS FOR RELIEF

### COUNT I

**Trafficking In Circumvention Technology And Services In Violation Of The Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2)**

26. DISH and NagraStar repeat and reallege the allegations in paragraphs 1-25.

27. On information and belief, Defendants have been importing, offering to the public, providing, or otherwise trafficking in IKS Server Passcodes in violation of 17 U.S.C. § 1201(a)(2).

28. The IKS Server Passcodes are primarily designed and produced for circumventing the DISH and NagraStar security system; have no commercially significant purpose or use other than to circumvent the DISH and NagraStar security system; and on information and belief are marketed by Defendants and others known to be acting in concert for use in circumventing the DISH security system.

29. DISH and NagraStar's security system is a technological measure that effectively controls access to, copying, and the distribution of copyrighted works. Defendants' actions that constitute violations of 17 U.S.C. § 1201(a)(2) were performed without permission, authorization, or consent from DISH, NagraStar, or any owner of the copyrighted programming broadcast by DISH.

30. Defendants violated 17 U.S.C. § 1201(a)(2) willfully and for purposes of commercial advantage and private financial gain. Defendants knew or should have known their actions are illegal and prohibited.

31. Defendants' violations cause damage to DISH and NagraStar in an amount to be proven at trial. Unless restrained and enjoined by the Court, Defendants will continue to violate 17 U.S.C. § 1201(a)(2).

## COUNT II

**Distributing Signal Theft Devices And Equipment In Violation Of The Federal Communications Act, 47 U.S.C. § 605(e)(4)**

32. DISH and NagraStar repeat and reallege the allegations in paragraphs 1-25.

33. On information and belief, Defendants has been importing, assembling, selling, or otherwise distributing IKS Server Passcodes in violation of 47 U.S.C. § 605(e)(4).

34. The IKS Server Passcodes are primarily of assistance in decrypting DISH and NagraStar's satellite transmissions of television programming without authorization. Defendants intended for the IKS Server Passcodes to be used for this purpose.

35. Defendants violated 47 U.S.C. § 605(e)(4) willfully and for purposes of commercial advantage and private financial gain. Defendants knew or should have known their actions are illegal and prohibited.

36. Defendants' violations cause damage to DISH and NagraStar in an amount to be proven at trial. Unless restrained and enjoined by the Court, Defendants will continue to violate 47 U.S.C. § 605(e)(4).

## COUNT III

**Circumventing An Access Control Measure In Violation Of The Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1)**

37. DISH and NagraStar repeat and reallege the allegations in paragraphs 1-25.

38. Defendants have been circumventing the DISH security system in violation of 17 U.S.C. § 1201(a)(1) by the acts set forth above, including their receipt of NagraStar's control words from the IKS Services, and their use of those pirated control words to decrypt DISH's satellite transmissions of television programming.

39. The DISH and NagraStar security system is a technological measure that effectively controls access to, copying, and distribution of copyrighted works. Defendants' actions that constitute violations of 17 U.S.C. § 1201(a)(1) were performed without the

permission, consent, or authorization of DISH, NagraStar, or any owner of copyrighted programming broadcast on the DISH platform.

40. Defendants violated 17 U.S.C. § 1201(a)(1) willfully and for the purpose of commercial advantage or private financial gain.

41. Defendants knew or should have known their actions were illegal and prohibited. Such violations have and will continue to cause damage to DISH and NagraStar in an amount to be proven at trial. Unless restrained and enjoined by the Court, Defendants will continue to violate 17 U.S.C. § 1201(a)(1).

## COUNT IV

**Receiving Satellite Signals Without Authorization in Violation of the**

**Federal Communications Act, 47 U.S.C. § 605(a)**

42. DISH and NagraStar repeat and reallege the allegations in paragraphs 1-25.

43. Through the IKS Services, Defendants have been receiving NagraStar's control words and DISH's satellite transmissions of television programming for their own benefit and without authorization in violation of 47 U.S.C. § 605(a).

44. Defendants violated 47 U.S.C. § 605(a) willfully and for purposes of commercial advantage or private financial gain.

45. Defendants knew or should have known their actions were illegal and prohibited. Such violations have and will continue to cause damage to DISH and NagraStar in an amount to be proven at trial. Unless restrained and enjoined by the Court, Defendants will continue to violate 47 U.S.C. § 605(a).

## COUNT V

**Intercepting Satellite Signals in Violation of the Electronic Communications**

**Privacy Act, 18 U.S.C. §§ 2511(1)(a) and 2520**

46.     DISH and NagraStar repeat and reallege the allegations in paragraphs 1-25.

47.     Through the IKS Services, Defendants have been intercepting NagraStar's control words and DISH's satellite transmissions of television programming in violation of 18 U.S.C. §§ 2511(1)(a) and 2520.

40.     Defendants violated 18 U.S.C. §§ 2511(1)(a) and 2520 for tortious and illegal purposes, or for commercial advantage or private financial gain.

41.     Defendants' interception was intentional, and therefore illegal and prohibited. Such violations have and will continue to cause damage to DISH and NagraStar in an amount to be proven at trial. Unless restrained and enjoined by the Court, Defendants will continue to violate 18 U.S.C. §§ 2511(1)(a) and 2520.

**PRAYER FOR RELIEF**

WHEREFORE, DISH Network L.L.C. and NagraStar LLC seek judgment against Defendants as follows:

A.     For a grant of permanent injunctive relief restraining and enjoining Defendants, and their employees, agents, representatives, attorneys, and all persons acting or claiming to act on his behalf or under his direction or authority, and all persons acting in concert or in participation with them, from:

(1).     manufacturing, importing, offering to the public, providing, or trafficking in IKS Server Passcodes, and any other technology, product, service, device, component, or part thereof that:

(a). is primarily designed or produced for circumventing the DISH and NagraStar security system or any other technological measure adopted by DISH and NagraStar that controls access to, copying, or the distribution of copyrighted works on the DISH platform;

(b). has only a limited commercially significant purpose or use other than to circumvent the DISH and/or NagraStar security system or any other technological measure adopted by DISH and/or NagraStar that controls access to, copying, or the distribution of copyrighted works on the DISH platform; or

(c). is marketed for use in circumventing DISH and/or NagraStar's security system or any other technological measure adopted by DISH and/or NagraStar that controls access to, copying, or the distribution of copyrighted works on the DISH platform;

(2). manufacturing, assembling, modifying, importing, exporting, selling, or distributing IKS Server Passcodes or any other product knowing or having reason to know that such product is primarily of assistance in the unauthorized decryption of direct-to-home satellite services;

(3). circumventing the DISH and/or NagraStar security system, or assisting others to circumvent the DISH and/or NagraStar security system;

(4). intercepting or otherwise receiving DISH and/or NagraStar's satellite transmissions of television programming without authorization, or assisting or procuring others to intercept or receive DISH and/or NagraStar's satellite transmissions of television programming without authorization;

B. For an order impounding, and authorizing DISH and NagraStar to take possession of and destroy, all IKS Server Passcodes, unauthorized receivers, piracy software, and any other devices, components, or parts thereof that are in the custody or control of Defendants and which

the Court has reasonable cause to believe were involved in a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, or the Federal Communications Act, 47 U.S.C. § 605;

C.   For an order directing Defendants to preserve and turn over to DISH and NagraStar all hard copy and electronic records that evidence, refer, or relate to IKS Server Passcodes or any other product that is used in satellite television piracy, including the manufacturers, exporters, importers, dealers, or purchasers of such products, or persons otherwise involved in operating any IKS server or receiving control words from same;

D.   Award DISH and NagraStar the greater of its actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of up to $2,500 for each violation of 17 U.S.C. §§ 1201(a)(1) and 1201(a)(2), under 17 U.S.C. §§ 1203(c)(2) and 1203(c)(3)(A);

E.   Award DISH and NagraStar the greater of its actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of up to $100,000 for each violation of 47 U.S.C. § 605(e)(4), under 47 U.S.C. § 605(e)(3)(C)(i);

F.   Award DISH and NagraStar the greater of its actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory damages in the amount of up to $10,000 for each violation of 47 U.S.C. § 605(a), under 47 U.S.C. § 605(e)(3)(C)(i). DISH and NagraStar ask the Court to increase the amount by $100,000 for each violation, at the Court's discretion, in accordance with 47 U.S.C. § 605(e)(3)(C)(ii);

G.   Award DISH and NagraStar the greater of its actual damages together with any profits made by Defendants that are attributable to the violations alleged herein, or statutory

damages in the amount of $100 per day for each violation of 18 U.S.C. §§ 2511(1)(a) or $10,000, under 18 U.S.C. § 2520(c)(2);

H. Award DISH and NagraStar punitive damages under 18 U.S.C. § 2520(b)(2);

I. Award DISH and NagraStar its costs, attorney's fees, and investigative expenses under 17 U.S.C. § 1203(b)(4)-(5), 47 U.S.C. § 605(e)(3)(B)(iii), and 18 U.S.C. § 2520(b)(3);

J. For pre and post-judgment interest on all damages, from the earliest date permitted by law at the maximum rate permitted by law; and

K. For such additional relief as the Court deems just and equitable.

Dated: February 27, 2019

Respectfully submitted,

/s/ Ray A. Reynolds
Ray A. Reynolds
lawreynolds@gmail.com
Arkansas Bar No. 77-109
28 S. College, Suite 3
Fayetteville, AR 72701
Tel: (479) 521-0503
Fax: (479) 521-3867

Attorneys for Plaintiffs DISH Network L.L.C. and NagraStar LLC